UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| Richard L. Lambert, | ) |
| | ) |
|     *Plaintiff*, | ) |
| | ) |
| v. | )   Case No. 3:15-CV-147-PLR-HBG |
| | ) |
| United States of America, *et al.*, | ) |
| | ) |
|     *Defendants*. | ) |

**Memorandum Opinion and Order**

This matter comes before the Court on the United States' motion to dismiss for lack of subject matter jurisdiction or, alternatively, failure to state a claim. [R. 14]. Mr. Lambert has responded in opposition, and the matter is ripe for consideration.[1] For the reasons discussed below, the United States' motion will be granted. Counts I-IV of Mr. Lambert's complaint will be dismissed.

**I.**

Richard L. Lambert served as a Special Agent in the FBI for 24 years, eventually being named the Special Agent in Charge of the Knoxville Division. In March 2012, Mr. Lambert retired and took a position at UT-Battelle, a private government contractor, as the Senior Counterintelligence Officer for their Oak Ridge Field Office. A major part of Mr. Lambert's new job was to "[e]stablish and maintain liaison relationships with the Federal Bureau of

---

[1] After briefing closed on the United States' motion to dismiss, Mr. Lambert moved for leave to file a sur-reply. [R. 24]. According to Mr. Lambert, the United States made new arguments in its reply, but he fails to identify what those new arguments are. With no extraordinary circumstances shown by Mr. Lambert to support filing a sur-reply, his motion will be denied.

Investigation and other appropriate intelligence community and law enforcement agencies." Mr. Lambert was therefore in frequent communication with FBI Counterintelligence Agents embedded in his office.

In October or November of 2012, Ken Moore, the FBI's Special Agent in Charge in Knoxville, approached Patrick Kelley, an attorney with the FBI and "designated agency ethics official," at a conference with questions about the one-year post-employment restrictions in 18 U.S.C. § 207(c). That section generally prohibits certain former senior executive branch personnel from communicating with their former department or agency with the intent to influence official action within one year of separation from government service. Mr. Moore was concerned that § 207(c) might apply to Mr. Lambert, meaning that Mr. Moore would not be allowed to speak with him. Mr. Kelley agreed that it might apply, and told Mr. Moore he would "dig into it."

After consulting with DOE and DOJ ethics offices, Mr. Kelley concluded that § 207(c) applied to Mr. Lambert's situation. In a November 8, 2012, email explaining the situation, Mr. Kelly stated that his conclusion meant that Mr. Lambert "cannot talk directly to any FBI employee." He acknowledged that this would be disruptive, but saw "no way around it"—the statute is a criminal prohibition that could not well be ignored. Mr. Kelley sent his email to Mr. Lambert, to executive managers in the FBI's Counterintelligence Division, and to Mr. Moore. Mr. Kelley also referred his opinion to the DOJ Office of the Inspector General and "other unknown, unnamed officials" at the DOE, DOJ, and UT-Battelle.

When Mr. Lambert received the email, he informed Mr. Kelley that his legal opinion was wrong and "provided him with the controlling law and operative facts." When asked to provide a legal or factual basis for his conclusion that Mr. Lambert was violating § 207(c), Mr. Kelley

2

refused and otherwise declined to provide Mr. Lambert with any citations to support his conclusion other than the survey of his colleagues at the DOE and DOJ.

Mr. Lambert states that he self-reported Mr. Kelley's conflict-of-interest allegations to the United States Attorney for the Eastern District of Tennessee and to the FBI's Office of Professional Responsibility. According to him, "[b]oth entities deemed [Mr.] Kelley's legal opinion to be meritless."

Seven months after Mr. Kelley sent his email, and three months after the one-year cooling off period ended, UT-Battelle terminated Mr. Lambert's employment. According to Mr. Lambert, his termination was a "direct and proximate result" of Mr. Kelley's erroneous legal opinion. Additionally, the DOJ's Inspector General and the DOJ's Public Integrity Section "launched and sensationalized massive criminal probes, which included the dispatch of teams of OIG Special Agents and PIS attorneys to East Tennessee who raided and searched [Mr. Lambert's] office . . . seized and analyzed [his] personal documents and effects, and interrogated dozens of [Mr. Lambert's coworkers.]"

In the end Mr. Lambert asserts that, because of the stigmatizing publicity and notoriety surrounding Mr. Kelley's legal opinion and the subsequent investigation, he "has been blackballed with the specter of illegal conduct and ethics violations, unable to gain reemployment despite his submission of more than 70 job applications to various employers."

Mr. Lambert filed suit on April 2, 2015. His amended complaint, filed June 20, 2015, contains five counts. The first three, brought under the Federal Tort Claims Act, are for: (I) legal malpractice against Mr. Kelley; (II) professional nonfeasance against former FBI Director Robert Mueller (for failing to ensure that Mr. Kelley was suitable for his position); and (III) negligent failure to train, supervise, and advise against former Attorney General Eric Holder. In Count IV,

3

Mr. Lambert asserts that the FBI and DOJ violated the Privacy Act. Finally, Count V asserts a *Bivens* claim against Mr. Kelley for violation of Mr. Lambert's due process rights.

## II.

When a defendant challenges subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of proving that the court has jurisdiction. *Madison-Hughes v. Shalala*, 80 F.3d 1121, 1130 (6th Cir. 1996). A Rule 12(b)(1) motion may challenge the sufficiency of the complaint itself, in what is known as a facial attack, or it may challenge the factual existence of subject-matter jurisdiction, which is known as a factual attack. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). In ruling on a facial attack, the court accepts as true the allegations of the complaint and construes them in a light most favorable to the plaintiff. *DLX v. Kentucky*, 381 F.3d 511, 516 (6th. Cir. 2004). On the other hand, when faced with a factual attack, the court does not presume that the complaint's allegations are true, and may resolve factual disputes when necessary. *Madison-Hughes v. Shalala*, 80 F.3d at 1130.

As for a Rule 12(b)(6) motion, Rules 8(a) and 12(b)(6) of the Federal Rules of Civil Procedure require the complaint to articulate a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This requirement is met when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). A motion to dismiss under Rule 12(b)(6) requires the court to construe the complaint in the light most favorable to the plaintiff, accept all the complaint's factual allegations as true, and determine whether the plaintiff can prove no set of facts in support of the plaintiff's claims that would entitle the plaintiff to relief. *Meador v. Cabinet for Human Resources,* 902 F.2d 474, 475 (6th Cir. 1990).

4

The court may not grant a motion to dismiss based upon a disbelief of a complaint's factual allegations. *Lawler v. Marshall,* 898 F.2d 1196, 1198 (6th Cir. 1990); *Miller v. Currie,* 50 F.3d 373, 377 (6th Cir. 1995) (noting that courts should not weigh evidence or evaluate the credibility of witnesses). The court must liberally construe the complaint in favor of the party opposing the motion. *Id.* However, the complaint must articulate more than a bare assertion of legal conclusions. *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434 (6th Cir. 1988). "[The] complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Id.* (citations omitted).

### III.

**A.** *Motion to Substitute*

As an initial matter, the United States has moved to substitute itself for Mr. Kelley in Count I. For non-constitutional torts, "[w]hen a claim of wrongful conduct is brought against a government official in his individual capacity . . . the Attorney General's certification that the defendant was acting within the scope of his employment requires substitution of the United States as a defendant." *Sobitan v. Glud,* 589 F.3d 379, 383 (7th Cir. 2009); *see* 28 U.S.C. § 2679(d)(1). On May 12, 2016, James G. Touhey, a Torts Branch Director in the Department of Justice certified that Mr. Kelley was acting within the scope of his employment when Mr. Lambert's claims arose. Accordingly, and without opposition from the plaintiff, the United States shall be substituted for Mr. Kelley in his individual capacity as to Count I.

**B.** *Malpractice, Failure to Train, and Professional Nonfeasance*

Because Mr. Lambert's three claims brought under the FTCA arise out of defamation or misrepresentation, this Court lacks subject matter jurisdiction and must dismiss them. The United States generally enjoys sovereign immunity, but "[t]he FTCA provides a limited

5

sovereign immunity waiver and subject matter jurisdiction for plaintiffs to pursue state law tort claims against the United States." *Milligan v. United States*, 670 F.3d 686, 692 (6th Cir. 2012). Under the FTCA, a plaintiff's suit can proceed against the government "in the same manner and to the same extent as a private individual under the circumstances." 28 U.S.C. § 2674. And the government's tort liability is "determined in accordance with the law of the state where the event giving rise to liability occurred." *Milligan*, 670 F.3d at 692 (quoting *Young v. United States*, 71 F.3d 1238, 1242 (6th Cir. 1995)).

There are exceptions to the FTCA though. Under § 2680, sovereign immunity is not waived for intentional torts, including claims "arising out of . . . libel, slander, [or] misrepresentation." 28 U.S.C. § 2680(h). "If a case falls within the statutory exceptions of 28 U.S.C. § 2680, the court lacks subject matter jurisdiction," and the case must be dismissed. *Feyers v. United States*, 749 F.2d 1222, 1225 (6th Cir. 1984). Furthermore, waivers of the United States' sovereign immunity "must be construed strictly in favor of the sovereign and must not be enlarged beyond what the language requires." *Estate of Smith ex rel. Richardson v. United States*, 509 F. App'x 436, 440 (6th Cir. 2012).

Section 2680(h) "thus relieves the Government of tort liability for pecuniary injuries which are wholly attributable to reliance on the Government's negligent misstatements." *Block v. Neal*, 460 U.S. 289, 297 (1983). According to the *Neal* court, "the essence of an action for misrepresentation, whether negligent or intentional, is the communication of misinformation on which the recipient relies." *Id.* at 296. Section 2680 therefore bars actions where the Government's misstatements are an "essential to the plaintiff's negligence claim." *Id*; s*ee also Dragoiu v. United States*, 2013 WL 119995, at *7 (E.D. Mich. Jan 9, 2013) ("Following *Neustadt* and *Neal*, circuit courts have held that section 2680(h) bars any claim in which the

6

government's misstatements, either negligently or intentionally made, were 'essential' to the plaintiff's claims.") (collecting cases).

Mr. Lambert specifically disavows any "causes of action for libel, slander, misrepresentation, defamation, deceit, tortious interference with contract or any other intentional tort." [R. 12, Amended Complaint, ¶ 94]. Likely knowing that this Court lacks jurisdiction to hear such claims, Mr. Lambert asserts that "[t]hose torts are not alleged in this complaint nor should they be inferred or implied as causes of action." *Id.* But a plaintiff cannot "use semantics to recast the substance of the claim so as to avoid a statutory exception." *Milligan*, 670 F.3d at 695. In deciding whether a plaintiff's claim falls within a particular exception, a court "must look to the substance of the claim and not limit . . . review to how the plaintiff pleaded the cause of action." *Id.*

The essence of Mr. Lambert's complaint is not Mr. Kelley's alleged malpractice, but his communication of misinformation on which the recipient (UT-Battelle and others) relied. Had Mr. Kelley simply delivered his advice to Mr. Lambert and dropped the matter without forwarding his conclusions to others, there would have been no harm. Mr. Lambert made that point clear when he expressly states that he "makes no claim whatsoever of detrimental reliance on Defendant's erroneous legal opinion." [R. 19, Page ID 719]. Mr. Lambert's damages stem from the defendants' "publication, dissemination, and proclamation of this erroneous legal opinion" that "decimated [Mr. Lambert's] professional reputation, disparaged [his] integrity, and falsely branded [him] a federal criminal." [R. 12, Amended Complaint, ¶ 4].

Mr. Lambert's efforts to recast his intentional tort defamation or misrepresentation claims into a negligence action not barred by § 2680(h) are particularly apparent where he asserts that the defendants "were highly motivated to be grossly negligent in their rendering of a legal

7

opinion to Plaintiff based on their animus stemming from Plaintiff's prior whistleblower reports."[2] [R. 19, Page ID 726]. Mr. Lambert's malpractice theory merely obfuscates the fact that he is really asserting a defamation or misrepresentation claim. "Because plaintiff's complaint set[s] forth an intentional tort claim merely sounding in negligence, such claim falls within the exception embodied in § 2680(h)," and should be dismissed. *Satterfield v. United States*, 788 F.2d 395 (6th Cir. 1986).

**C.** *Privacy Act*

In his final claim against the United States, Mr. Lambert contends that the defendants violated the Privacy Act, which generally prohibits disclosure without an individual's consent of "any record which is contained in a system of records." 5 U.S.C. § 552a(b). To state a Privacy Act disclosure claim, a plaintiff must show that: (1) the disclosed information is a record contained within a system of records; (2) the agency improperly disclosed the information; (3) the disclosure was willful or intentional; and (4) the disclosure adversely affected the plaintiff. *Doe v. United States Dep't of Justice*, 660 F. Supp. 2d 31, 44-45 (D. D.C. 2009).

A "system of records" for the purposes of the privacy act is "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." 5 U.S.C. § 552a(a)(5). "A system of records exists only if the information contained within the body of material is both *retrievable* by personal identifier and actually *retrieved* by personal identifier." *Paige v. DEA*, 665 F.3d 1355, 1359 (D.C. Cir. 2012) (quoting *Maydak v. United States*, 630 F.3d 166, 178 (D.C. Cir. 2010)) (emphasis in original). Thus, to violate § 552a(b), an

---

[2] The accuracy of Mr. Kelley's opinion or his motives behind it are not relevant at this stage, where the Court accepts the plaintiff's facts pled as true. Only relevant here is the idea that the defendants were intentionally negligent—a strange allegation that only makes sense in light of the fact that intentional torts like defamation, libel, or misrepresentation are barred by § 2680(h).

8

individual generally must actually retrieve the information in question from the system of records in which it is contained. *Id.* (quoting *Armstrong v. Geithner*, 608 F.3d 854, 857 (D.C. Cir. 2010)).

In his complaint, Mr. Lambert identifies two pieces of disclosed information that he believes meet the "record contained within a system of records" requirement: (1) Mr. Kelley's legal opinion and (2) the "allegations and investigative results" of the FBI and DOJ's inquiry into whether Mr. Lambert violated § 207(c). While he has no actual evidence that Mr. Kelley's legal opinion is stored within a system of records, Mr. Lambert concludes that "it is highly probable" that the opinion is memorialized in the FBI and DOJ records system because the Code of Federal Regulations requires designated ethics officials to keep records on advice rendered. 5 C.F.R. § 2638.203(b)(8). Mr. Lambert also assumes that the DOJ and FBI must have kept some sort of records on their investigation into his purported § 207(c) violation because the DOJ and FBI generally keep such records.

Even giving Mr. Lambert the benefit of the doubt, and not requiring he allege facts in support of these assumptions, his Privacy Act claim still lacks any allegation of actual retrieval of those records. As mentioned above, a Privacy Act claim must allege that an individual actually retrieved the information in question from the system of records in which it was contained. The disclosure of information "acquired from non-record sources—such as observation, office emails, discussions with co-workers and the 'rumor mill'—does not violate the Privacy Act . . . , even if the information disclosed is also contained in agency records." *Cloonan v. Holder*, 768 F. Supp 2d 154, 164 (D. D.C. 2011). There is no allegation that Mr. Kelley retrieved his email from a system of records before disclosing it to others at the FBI, DOJ, and UT-Battelle. Likewise, there is no allegation of anyone retrieving a record by personal

9

identifier relating to the FBI and DOJ's investigation into Mr. Lambert. With no facts supporting the allegation that the disclosed information was indexed and later retrieved by name or personal identifier, Mr. Lambert's Privacy Act claim cannot survive a motion to dismiss.

### IV.

For the foregoing reasons, the United States' motion to dismiss [R. 14] is **Granted**. Counts I-IV of the plaintiff's amended complaint are dismissed. The plaintiff's motion for leave to file a supplemental brief or sur-reply [R. 24] is **Denied**.

**IT IS SO ORDERED.**

_____
**UNITED STATES DISTRICT JUDGE**